BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

SAMUEL REBO (DC Bar No. 1780665)
CODY KNAPP
KATE TALMOR
ROBERT C. MERRITT
Trial Attorneys
Samuel.a.rebo@usdoj.gov
United States Department of Justice
1100 L St. NW
Washington, DC 20005
(202) 880-0206
*Counsel for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DANIEL T. LASCHOBER, | Case No.: 3:22-cv-01373-IM |
| Plaintiff, | |
| v. | DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS |
| MIGUEL A. CARDONA, et al. | |
| Defendants. | |

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

    I.    Plaintiff's Alleged Harm is Speculative and Generalized ..................................... 1

        A.    Plaintiff's Future Harm is not Certainly Impending ................................. 2

        B.    Plaintiff's Future Harm is a Generalized Grievance ................................. 4

    II.    Plaintiff's Alleged Harm Stems from Himself or the Fed ..................................... 5

    III.    Plaintiff's Alleged Injury is Not Redressable by an Injunction Against Defendants ............................................................................................................... 7

CONCLUSION...................................................................................................................... 9

# TABLE OF AUTHORITIES

**CASES**

*Barton v. D.C.*,
  131 F. Supp. 2d 236 (D.D.C. 2001) .................................................................................. 7

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................................. 1, 3, 4

*Dewberry v. Kulongoski*,
  406 F. Supp. 2d 1136 (D. Or. 2005) ................................................................................ 4

*Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.*,
  28 F.3d 1268 (D.C. Cir. 1994) ......................................................................................... 6

*Fish v. Kobach*,
  840 F.3d 710 (10th Cir. 2016) ......................................................................................... 6

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................ *passim*

*Massachusetts v. EPA*,
  549 U.S. 497 (2007) ......................................................................................................... 8

*Parents for Priv. v. Dallas Sch. Dist. No. 2*,
  326 F. Supp. 3d 1075 (D. Or. 2018) ................................................................................ 8

*Reuss v. Balles*,
  584 F. 2d 461 (D.C. Cir. 1978) .................................................................................... 4, 5

*San Diego Cty. Gun Rts. Comm. v. Reno*,
  98 F.3d 1121 (9th Cir. 1996) ........................................................................................... 4

*Simon v. E. Ky. Welfare Rts. Org.*,
  426 U.S. 26 (1976) ........................................................................................................... 7

*State v. Biden*,
  52 F.4th 362 (8th Cir. 2022) ............................................................................................ 7

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ........................................................................................................... 8

*Wagafe v. Trump*,
   334 F.R.D. 619 (W.D. Wash. 2020) ........................................................................... 7

**STATUTES**

12 U.S.C. § 225a ................................................................................................................. 3

**RULES**

Fed. R. Civ. P. 4(i)(2) ......................................................................................................... 7

Fed. R. Civ. P. 12(b)(1) ...................................................................................................... 1

**OTHER AUTHORITIES**

*Consumer Handbook on Adjustable-Rate Mortgages* 27, The Federal Reserve,
   https://perma.cc/KE5U-9LAN (last visited Mar. 20, 2023) ........................................ 6

Paul Davidson, *Some economists expect Fed to keep interest rates unchanged amid Silicon Valley Bank crisis*, USA TODAY (Mar. 13, 2023),
   https://perma.cc/8PGF-MMUF ................................................................................... 3

*The Fed and the Dual Mandate*, ST. LOUIS FED,
   https://perma.cc/PR7C-LAR6 (last visited Mar. 20, 2023) ........................................ 3

Defendants' Reply Brief in Support
Of Their Motion to Dismiss

## INTRODUCTION

The Court should grant Defendants' motion to dismiss because Plaintiff has not plausibly alleged that he suffered a cognizable injury-in-fact, caused by Defendants' actions, and redressable by the relief requested. Nothing in Plaintiff's opposition brief ("Response"), ECF No. 19, undermines that conclusion. For all of the reasons below and those stated in the motion to dismiss, the Court should dismiss this case for a lack of standing under Federal Rule of Civil Procedure 12(b)(1).

## ARGUMENT

I. Plaintiff's Alleged Harm is Speculative and Generalized

First, the Court should dismiss this case because, as Defendants explained in their motion to dismiss (the "Motion") Plaintiff has not plausibly alleged that an increase in his adjustable-rate mortgage ("ARM") interest rate is "certainly impending" or that this alleged harm is "concrete" and "particularized" as required in the standing context for injury-in-fact. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Plaintiff's harm is inherently speculative: it assumes that the challenged policies will have some discernible effect on generalized inflation in the national economy (which Plaintiff admits is already "the highest and most persistent inflation in decades," Resp. at 17); that this particular effect, as opposed to any of the other numerous factors contributing to this "historically high" inflation, *id*. at 12, will independently cause the Federal Reserve Bank (the "Fed") to increase the federal funds rate; and that this corresponding increase to the federal funds rate will have a concrete impact on Plaintiff's ARM that is attributable to the challenged Department of Education policies. Moreover, the harm is generalized in the sense that every action by the Fed affects the value of financial instruments across the country, and so Plaintiff's alleged future harm applies to him no more than it applies to the public at large. *See Lujan v. Defs. of*

1

*Wildlife,* 504 U.S. 555, 573-74 (1992). As discussed below, Plaintiff's Response only confirms that he asserts a quintessentially speculative and generalized grievance.

  A. Plaintiff's Future Harm is not Certainly Impending

Plaintiff does not plausibly allege that an increase in the interest rate of his ARM, caused by the challenged policies, is certainly impending.[1] In his Response, Plaintiff relies on the opinions of certain cherry-picked economic analysts to argue that the challenged policies will increase inflation. *See* Resp. at 10. But at the same time that he claims that "commentators" "are in agreement [that] the [challenged policies] are inflationary," *id.,* he recognizes that "[t]here are some who argue ending the payment pause will offset any inflationary effect from any debt forgiveness." *Id.* at 11. As this contradiction demonstrates, commentators disagree both on the challenged polices' inflationary effect and also on the date from which inflation should be measured. In other words, it is far from certain that the policies challenged by Plaintiff will result in increased inflation.

In any event, even if the challenged policies did increase inflation in some abstract sense, the Court cannot predict how the Fed will respond to increased inflation. Plaintiff concedes to not being able to "estimate . . . the inflationary effect of the Secretary's plans." *Id*. at 10. He argues that any policy that "puts more money in the hands of borrowers is inflationary," and therefore the cause of the Fed's increasing the federal funds rate in response. *Id.* at 11-12. But that argument would mean that any plaintiff with an adjustable-rate mortgage, or credit card, or loan, could

---

[1] As noted in Defendants' opening brief, Plaintiff's supplemental complaint, which challenges only the payment pause, supersedes his original complaint, which challenges only the student loan forgiveness plan. Defs.' Br., ECF No. 18, 7, 9 n.1. Plaintiff concedes this point in response but claims he could re-file his original complaint if the Court dismisses it as superseded. Resp. at 4-5. That question is of course not currently before the Court, and as Defendants argued, neither complaint supports Plaintiff's standing. Defs.' Br. at 9 n.1.

2

Defendants' Reply Brief in Support
Of Their Motion to Dismiss

challenge the legality of *any* policy that puts more money in the hands of consumers under this theory of standing. That would be a radical expansion of standing doctrine.

Plaintiff also argues that the Fed has a "dual mandate" to maximize employment and stabilize prices, which to him translates into a single mandate to reduce inflation, and to do so by increasing the federal funds rate. Resp. at 16-17. Plaintiff takes this a step further by claiming the Fed is "legally bound to respond to the highest and most persistent inflation in decades by raising the federal funds rate . . . ." *Id.* at 17. There is no such single mandate to combat inflation; rather, the Fed must aim to achieve "maximum employment, stable prices, and moderate long-term interest rates." 12 U.S.C. § 225a. Increasing the federal funds rate often *decreases* total employment, and therefore these goals are sometimes in tension. *See The Fed and the Dual Mandate*, St. Louis Fed, https://perma.cc/PR7C-LAR6 (last visited Mar. 20, 2023) ("Are the Fed's Dual Mandate Goals Complementary?"). In fact, economists have speculated, in response to the recent Silicon Valley Bank closure, that the Fed would not continue to raise interest rates. *See, e.g.*, Paul Davidson, *Some economists expect Fed to keep interest rates unchanged amid Silicon Valley Bank crisis*, USA Today (Mar. 13, 2023), https://perma.cc/8PGF-MMUF. Overall, determining the correct balance between its statutory goals is within the Fed's "broad and legitimate discretion," *Lujan*, 504 U.S. at 562 (citation omitted), and Plaintiff cannot presume to "certainly" predict its next move, *Clapper*, 568 U.S. at 409.

Indeed, determining the likelihood of any Fed action in response to the challenged policies is an exercise in speculation. Even if taming inflation were the Fed's only goal, Plaintiff again concedes that the Fed has options at its disposal other than increasing the federal funds rate, "some of which have an impact on inflation in a complementary fashion [as the federal funds rate]." Resp. at 16. Plaintiff does not explain why the Fed will not use these other tools beyond asserting

3

Defendants' Reply Brief in Support
Of Their Motion to Dismiss

that the federal funds rate is its "primary tool." *Id.* Plaintiff also concedes that "[t]he Fed does not address inflation by raising rates in response to discrete events or activities." *Id.* at 13. As a result, if the Fed raised the federal funds rate in the future after Defendants implemented the challenged policies, Plaintiff concedes that the exact cause of such a rate hike—*e.g.*, whether from the challenged policies or from some other economic force or forces—would be unknowable. However, to prevail in this lawsuit, Plaintiff must plausibly allege that the Fed will "certainly" increase the federal funds rate *because* of the challenged policies, not just that it is likely to do so. *See Clapper*, 568 U.S. at 401 (rejecting "reasonable likelihood" as the injury-in-fact standard in favor of "certainly impending"). For all of the above reasons and those stated in the motion to dismiss, he has not done so here.

### B. Plaintiff's Future Harm is a Generalized Grievance

Plaintiff also lacks standing because his alleged harm is a generalized grievance that is not concrete or particularized. Plaintiff appears to argue that his alleged harm is not a generalized grievance because Defendants' challenged policies have "a direct impact on [his] financial state." Resp. at 6. But this is not the correct standard—in fact, courts commonly find no concrete and particularized injury exists even when the plaintiff pleads financial harm. *See, e.g. Dewberry v. Kulongoski*, 406 F. Supp. 2d 1136, 1143 (D. Or. 2005) (reduced property values); *San Diego Cty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1131 (9th Cir. 1996) (cost of guns). Rather, a generalized grievance is one that applies "no more directly and tangibly [to] him than it does the public at large[.]" *Lujan*, 504 U.S. at 574.

Here, Plaintiff's alleged harm is a generalized grievance because the federal funds rate impacts every American and an increase in the rate does not apply more directly to Plaintiff than to anyone else. *See Reuss v. Balles*, 584 F. 2d 461, 469 (D.C. Cir. 1978). As Plaintiff

4

Defendants' Reply Brief in Support
Of Their Motion to Dismiss

acknowledges, "dampen[ing] economic demand . . . . is the [federal funds rate's] sole purpose." Resp. at 8. In *Reuss*, the D.C. Circuit held that the plaintiff lacked standing to sue based on allegations in the complaint that increases in the federal funds rate reduced the market value of the plaintiff's bonds, thereby reducing his net worth. 584 F.2d at 468-69 & n.23. Plaintiff attempts to distinguish *Reuss* by arguing that the federal funds rate would have no impact on the value of a bond if held to maturity. Resp. at 7. That may or may not be true, but it goes beyond what was alleged, and at issue, in *Reuss*. The court's reasoning that the plaintiff's grievance was "very generalized," "one held in common, to some degree, by virtually all members of the public," is fully applicable here. *Reuss*, 584 F.2d at 469. The court further explained that:

> "[t]he somewhat unusual features of long-term bonds do not sufficiently distinguish them from the many other forms that an individual's financial holdings can assume, and, since all forms of personal wealth are affected to some degree by actions of the type under challenge here, it is difficult to imagine how appellant could set himself apart from other citizens seeking some way to protect the value of their holdings."

*Id*. at 469-70. That reasoning compels dismissal of Plaintiff's claim for lack of standing.

II. Plaintiff's Alleged Harm Stems from Himself or the Fed

Furthermore, Plaintiff does not plausibly allege that Defendants' actions will cause his alleged harm, *i.e.*, a future increase in the interest rate of his ARM. To the extent Plaintiff speculates that he will suffer some attenuated future harm, that purported harm would be caused by the Fed, an independent third-party not before the Court, or Plaintiff himself. It is black-letter law that standing is more difficult to demonstrate when it depends on the actions of third parties not before the Court, and that is even more true here, where Plaintiff's attenuated theory of causation is based on complex and unpredictable market effects. Ultimately, Plaintiff has not plausibly alleged that Defendants' actions themselves will cause an increase in his ARM interest rate because he can only speculate that Defendants' actions will increase inflation and guess how

5

Defendants' Reply Brief in Support
Of Their Motion to Dismiss

the Fed will respond to that hypothetical increase. Plaintiff's Response, if anything, strengthens Defendants' arguments by emphasizing Plaintiff's agency when entering into a "freely-negotiated contract," an "adjustable" mortgage rate that, by its very terms, will fluctuate with changing economic conditions, as well as the Fed's role as an independent actor in the alleged causal sequence. Resp. at 5.

Plaintiff's harm is self-inflicted because he was keenly aware of the risks when signing his ARM. In his Response, Plaintiff states that his ARM contract was "freely negotiated" and explains, in detail, his 35-year background in business and finance. *Id.* As a result, Plaintiff concedes that he was "well-positioned to understand the inherent risk-and-reward tradeoffs associated with ARM products," *id.*, including the risk that his ARM interest rate could increase for any number of reasons when he committed to repaying his mortgage under its terms. Plaintiff chose an ARM anyway, and any injury that he now claims from an increase in his interest rate is therefore "self-inflicted." *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016); *see also Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.,* 28 F.3d 1268, 1276 (D.C. Cir. 1994) (noting that harm stemming from one's "own budgetary choices" cannot support standing). Accordingly, Plaintiff cannot demonstrate the causation prong of the standing test.

On the other hand, Plaintiff argues that, even with his business and finance experience, he could not have expected Defendants to enact the specific policies challenged here, cause inflation to increase, and therefore force the Fed to increase the federal funds rate. That's beside the point. Plaintiff chose an ARM which, by its very definition, has an interest rate that may fluctuate for any number of reasons, was warned of this fact, *see, e.g. Consumer Handbook on Adjustable-Rate Mortgages* 27, The Federal Reserve, https://perma.cc/KE5U-9LAN (last visited Mar. 20, 2023) ("[Y]ou should keep in mind that [ ] the interest rate for an ARM can change . . . ."), and thus

6

suffers no Article III injury when his ARM interest rate increases. Plaintiff took on this risk when he signed his mortgage, and that itself renders his injury "self-inflicted." *See, e.g. Barton v. D.C.*, 131 F. Supp. 2d 236, 243, 247-48 (D.D.C. 2001) (concluding plaintiff's harm was self-inflicted by declining to sign a longer-term lease even when plaintiff argued that the District of Columbia later violated the D.C. Procurement Practices Act).

Alternatively, Plaintiff's harm is caused by the Fed, an independent actor not before the Court. Plaintiff appears to argue in his Response that the instant lawsuit is against the Fed as well as the named Defendants. *See* Resp. at 15. But as explained in Defendants' motion, this lawsuit does not name the Fed as an independent defendant, and a lawsuit against the United States is not *de facto* a lawsuit against each of its constituent agencies. *See, e.g. State v. Biden,* 52 F.4th 362, 369 (8th Cir. 2022) (treating non-defendant agencies as third parties not before the court for standing purposes, in a case where the President, in his official capacity, is a named defendant); *Wagafe v. Trump*, 334 F.R.D. 619, 624 (W.D. Wash. 2020) (same in the context of a motion to compel). Finally, even if Plaintiff wanted to sue the Fed, he has not followed the rules of proper service to join the Fed as a defendant. *See* Fed. R. Civ. P. 4(i)(2). Accordingly, the Fed is a third-party actor not joined as a defendant in this case.

III.     Plaintiff's Alleged Injury is Not Redressable by an Injunction Against Defendants

Finally, any alleged future increase in the interest rate of Plaintiff's ARM is not redressable by the relief Plaintiff seeks: an injunction against the challenged policies. It must be "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38, 43 (1976)). Plaintiff cannot say that an injunction will stop the Fed from raising interest rates due to other economic forces. In fact, he concedes as much, noting "[t]he fed funds rate is thus expected to continue

7

Defendants' Reply Brief in Support
Of Their Motion to Dismiss

rising in the near future." Resp. at 14 (citation omitted). And, even if an injunction issued, he can only guess whether it would have any ultimate effect on the interest rate of his ARM. *Id.* at 13 ("The Fed does not address inflation by raising rates in response to discrete events or activities.").

Rather, Plaintiff attempts to rebut the arguments made in the motion to dismiss by moving the goalposts. That is, he argues that "the goal of relief in this case is to eliminate the pressure of the Secretary's action on the short-term interest rates prior to Plaintiff's ARM interest-rate increase." *Id.* at 17. While that may be Plaintiff's goal, it does not describe any concrete injury. To the extent Plaintiff claims any personalized injury at all, it is to his ARM interest rate, not generalized "pressure" on short-term interest rates. That is the injury which a favorable Court order must redress, and there is no way that a Court order could secure that result in this case (nor could it secure a decrease in short-term interest rates). *See Lujan*, 504 U.S. at 561; *Parents for Priv. v. Dallas Sch. Dist. No. 2*, 326 F. Supp. 3d 1075, 1091 (D. Or. 2018) ("The concept of redressability 'has been ingrained in our jurisprudence from the beginning,' the point of which is to determine 'whether a plaintiff personally would benefit in a tangible way from the court's intervention.'" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 n.5 (1998))).

Nor does Plaintiff's cite to *Massachusetts v. EPA* change the analysis. Resp. at 17-18. In *Massachusetts*, the Supreme Court observed that "a plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." 549 U.S. 497, 525 (2007) (citation omitted). But here, the question is not whether an injunction could remedy *some* of Plaintiff's injury. After all, Plaintiff only alleges a single injury: a future increase in his ARM interest rate. And Plaintiff does not plausibly allege that an injunction would likely redress that future injury *at all*. The Court should therefore dismiss the case.

**CONCLUSION**

For the reasons stated herein and in the motion to dismiss, the Court should dismiss this action for lack of standing.

Dated: March 21, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

<u>/s/ Samuel Rebo</u>
SAMUEL REBO (DC Bar No. 1780665)
CODY KNAPP
KATE TALMOR
ROBERT C. MERRITT
Trial Attorneys
Samuel.a.rebo@usdoj.gov
United States Department of Justice
1100 L St. NW
Washington, DC 20005
(202) 880-0206
*Counsel for Defendants*

9

Defendants' Reply Brief in Support
Of Their Motion to Dismiss

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 21, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically serve a copy to all counsel of record; I also sent the foregoing to Plaintiff by electronic mail at the following address: LVC_complaint@outlook.com.

                                  */s/ Samuel Rebo*
                                SAMUEL REBO