## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DANIEL T. LASCHOBER**, | Case No. 3:22-cv-01373-IM |
| Plaintiff, | **OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| **DR. MIGUEL A. CARDONA,** U.S. Secretary of Education, in his official capacity, **DEPARTMENT OF EDUCATION,** and **UNITED STATES OF AMERICA**, | |
| Defendants. | |

Daniel T. Laschober, 31213 SW Willamette Way W, Wilsonville, OR 97070. Pro se.

Samuel Rebo, United States Department of Justice, 1100 L Street NW, Washington, DC 20005. Attorney for Defendants.

**IMMERGUT, District Judge.**

On September 12, 2022, Plaintiff Daniel T. Laschober ("Plaintiff") filed a Complaint in this Court against Defendants Dr. Miguel A. Cardona, the Department of Education, and the United States of America ("Defendants"), alleging financial injury arising out of the Department of Education's ("Department") loan forgiveness plan. ECF 1. Plaintiff filed a Supplemental Complaint on February 3, 2023, alleging financial injury arising out of an extension of the Department's loan repayment pause on Department-held student loans. ECF 17. Defendants filed a Motion to Dismiss for lack of jurisdiction on February 21, 2023, ECF 18, to which Plaintiff

PAGE 1 – OPINION AND ORDER

timely responded, ECF 19, and Defendants timely replied, ECF 20. On June 20, 2023, Defendants filed a Supplemental Notice regarding mootness.[1] ECF 21.

Before this Court is Defendants' Motion to Dismiss Plaintiff's Supplemental Complaint,[2] ECF 18. This Court finds that Plaintiff lacks standing and, consequently, that this Court lacks subject matter jurisdiction over this case. Accordingly, this Court GRANTS Defendants' motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

## BACKGROUND

On February 3, 2023, Plaintiff filed a Supplemental Complaint "in response to the pause in payments and interest accrual for federal student loans announced by the U.S. Secretary of Education [("Secretary")] in November 2022." ECF 17 at ¶ 1. The following factual allegations are taken from Plaintiff's Supplemental Complaint. ECF 17.

---

[1] In their Supplemental Notice, Defendants contend that Plaintiff's payment pause claim is moot and must be dismissed for lack of jurisdiction because of the passage of the Fiscal Responsibility Act of 2023, Pub. L. No. 118-5, § 271, 137 Stat. 10, 33–34. This act provides that the obligation to make payments on federal student loans will resume sixty days after June 30, 2023. *Id.* § 271(a), (c). As the payment pause is still in effect as of the date of this Opinion and Order, this Court finds that Defendants have failed to demonstrate that Plaintiff's case presents no "live" issues for this Court to address. *See Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014).

[2] Plaintiff argues that his original Complaint is still operative, such that this Court should consider both Plaintiff's original Complaint and Supplemental Complaint in ruling on Defendants' Motion. *See* ECF 17 at 21; ECF 19 at 3–5. However, a supplemental complaint "completely super[s]edes any earlier complaint, rendering the original complaint non-existent." *Jackson v. Fong*, 870 F.3d 928, 934 (9th Cir. 2017) (alteration in original). This Court finds that Plaintiff's Supplemental Complaint, ECF 17, is Plaintiff's operative pleading and completely supersedes Plaintiff's original Complaint. Accordingly, this Court only considers Plaintiff's Supplemental Complaint in ruling on Defendants' Motion. However, this Court further notes that the below standing analysis applies equally to Plaintiff's original Complaint, as Plaintiff concedes. *See* ECF 19 at 5 (stating that this Court should "apply its findings and conclusions [regarding the Supplemental Complaint] to the original Complaint as well").

PAGE 2 – OPINION AND ORDER

A. **The COVID-19 National Emergency**

On March 13, 2020, President Donald J. Trump, declared a national emergency due to the nationwide COVID-l9 outbreak under the National Emergencies Act ("NEA"), 50 U.S.C. § 1601, *et seq.*, and the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), 42 U.S.C. § 5121, *et seq*. *Id.* at ¶¶ 11, 18. On January 30, 2023, President Joseph R. Biden, Jr. announced his intention to end the national emergency under the NEA and Stafford Act on May 11, 2023. *Id.* at ¶ 17. However, as of the filing of Plaintiff's Supplemental Complaint, the national emergency had remained operative under both acts. *See id.* at ¶¶ 12, 28.

B. **The Department of Education's Response to COVID-19**

In response to the national emergency declared in March 2020, then-Secretary of Education Betsy DeVos paused loan payments for federal student-loan borrowers and set the interest rate to zero percent on federally-held student loans for sixty days, effective March 13, 2020. *Id.* at ¶ 31. On March 27, 2020, Congress directed the Department to extend these policies through September 30, 2020 under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, § 3513, 134 Stat. 281 (2020). *Id.* at ¶ 32. Acting Secretaries under the Trump and Biden administrations subsequently granted multiple additional extensions, citing the Secretary's authority under the Health and Economic Recovery Omnibus Emergency Solutions Act ("HEROES Act"), 20 U.S.C. §§ 1098aa–1098ee.[3] *Id.* at ¶¶ 33–34. In August 2022, current Secretary Miguel Cardona announced the "final extension of the pause on

---

[3] Citing the global economic harms inflicted by the COVID-19 pandemic, the Secretary determined that a payment pause on federal student loans was justified under the HEROES Act. *See* ECF 17 at ¶¶ 43, 46. The HEROES Act authorizes the Secretary to "waive or modify any statutory or regulatory provision applicable to" Title IV of the Higher Education Act of 1965, 20 U.S.C. §§ 1070, *et seq.*, "as the Secretary deems necessary in connection with a war or other military operation or national emergency." 20 U.S.C. 1098bb(a)(l); ECF 17 at ¶ 43.

student-loan repayment, interest, and collections," which would be effective through December 31, 2022. *Id.* at ¶ 35.

In August 2022, President Biden introduced a plan to forgive a portion of federal student loan debt held by the Department of Education. *Id.* at ¶ 36. The Supreme Court subsequently granted certiorari in two cases challenging President Biden's loan forgiveness plan: *Biden v. Nebraska*, 143 S. Ct. 477 (2022) and *Department of Education v. Brown*, 143 S. Ct. 541 (2022). *See id.* at ¶ 38. Both cases were set for oral argument on February 28, 2023. *Id.* On account of these cases, Secretary Cardona announced an additional extension of the payment pause on November 22, 2022 to allow for resolution of the cases prior to lifting the pause. *Id.* at ¶ 39. Plaintiff alleges that given the likelihood that the Supreme Court will not announce its decision until June 2023,[4] "the first date borrowers can expect to resume payment is on or near September 1, 2023." *Id.* at ¶ 41. Plaintiff further alleges that as a result, "student-loan forbearance will have been in effect for a continuous period of 42 months." *Id.*

**C. Projected Economic Effects of the Payment Pause**

Plaintiff alleges that the payment pause costs approximately five billion dollars per month and that extending the pause for eight months into 2023 would cost another forty billion dollars. *Id.* at ¶ 49. Plaintiff cites the Committee for a Responsible Federal Budget ("CRFB") for an estimate that "[a] year-long extension of the pause would add 15 to 20 basis points to the

---

[4] On June 30, 2023, the United States Supreme Court issued opinions in *Biden v. Nebraska* and *Department of Education v. Brown*. *Biden v. Nebraska*, —— U.S. ——, 2023 WL 4277210 (2023) (holding that Secretary of Education exceeded his authority under HEROES Act in relation to loan forgiveness plan and that loan forgiveness was decision for Congress or an agency acting pursuant to clear delegation from Congress); *Dep't of Educ. v. Brown*, —— U.S. ——, 2023 WL 4277209 (2023) (holding that borrowers lacked standing because they failed to establish that alleged economic injury was fairly traceable to loan forgiveness plan). Neither opinion ruled specifically on the legality of the Department's payment pause policy.

inflation rate." *Id.* at ¶ 50. Plaintiff further estimates that in order to address the inflation resulting from the extended payment pause, the Federal Reserve Bank ("Fed") would have to increase the federal funds rate by fifty to seventy-five basis points. *Id.* at ¶¶ 52, 56.

Plaintiff alleges that the extended payment pause will increase the interest on his adjustable-rate mortgage. *Id.* at ¶¶ 54–56. Plaintiff owns a home in Wilsonville, Oregon, financed in part by an adjustable-rate mortgage with an interest rate tied to the Federal Reserve Board's "Weekly Average 1-Year Treasury Constant Maturity Index." *Id.* at ¶ 54. Plaintiff's interest rate is updated annually on July 1. *Id.* Plaintiff's current annual interest expense is approximately $10,400. *Id.* at ¶ 56. Plaintiff alleges that because the one-year treasury index is "highly correlated" to the federal funds rate, "a 50 basis point increase in the federal funds rate and a corresponding increase in the index for [Plaintiff's mortgage] equates to approximately $1[,]000 per annum in additional interest costs." *Id.*

## STANDARDS

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). As such, a court must presume that an action "lies outside [its] limited jurisdiction, . . . and the burden of establishing the contrary rests upon" the party invoking federal jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted); *see also TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2207 (2021). A court's subject matter jurisdiction refers to its "statutory or constitutional power to adjudicate the case" before it. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) (emphasis omitted) (citation omitted). When a court "lacks subject-matter jurisdiction, the court must dismiss the complaint" under Federal Rule of Civil Procedure 12(b)(1). *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (citation omitted).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction must be granted when the allegations contained in the complaint fail to establish jurisdiction either "facial[ly]" or "factual[ly]." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "A 'facial' attack" under Rule 12(b)(1) "accepts the truth of the plaintiff's [well-pleaded] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted).

Federal courts hold a pro se litigant's pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (citation omitted). "A document filed pro se is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (emphasis omitted) (internal quotation marks and citation omitted).

## DISCUSSION

In his Supplemental Complaint, Plaintiff alleges that that the Secretary's extension of the payment pause exceeds the scope of the Secretary's authority under the HEROES Act.[5] ECF 17 at ¶¶ 58–87. As a result, Plaintiff requests that this Court (1) issue an order declaring that the extension of the payment pause violates the HEROES Act, (2) preliminarily and permanently enjoin the payment pause, and (3) compel Defendants to resume collections and interest accrual. *Id.* at 21. Defendants move to dismiss Plaintiff's Supplemental Complaint, asserting that Plaintiff lacks standing. ECF 18 at 8. This Court finds that Plaintiff has not established standing and, consequently, that this Court lacks subject matter jurisdiction over this case.

---

[5] Defendants note that Plaintiff fails to articulate a cause of action. ECF 18 at 7. This Court agrees. However, this Court need not address this issue because it finds that Plaintiff has failed to establish standing and grants Defendants' motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

Article III of the Constitution confers limited authority on federal courts to hear only active cases or controversies brought by persons who demonstrate standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016). Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* at 338. To have standing, a plaintiff must have "personal interest . . . at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). To demonstrate this personal interest, a plaintiff must show: (1) he has suffered an "injury in fact"; (2) "the injury is fairly traceable to the challenged action of the defendant"; and (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 180–81; *see also Spokeo*, 578 U.S. at 338.

**A. Injury in Fact**

First, Defendants contend that Plaintiff has failed to sufficiently plead an injury in fact. An injury in fact is an invasion of the plaintiff's legally protected interest that is, among other things, "actual or imminent." *TransUnion LLC*, 141 S. Ct. at 2203. In his Supplemental Complaint, Plaintiff alleges a future injury, rather than any actual, existing injury. "A plaintiff threatened with future injury has standing to sue 'if the threatened injury is certainly impending, or there is a substantial risk the harm will occur.'" *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). "Allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotations and citation omitted). Indeed, plaintiffs may not rely "on mere conjecture about possible governmental actions" to demonstrate injury and must instead present "concrete evidence to substantiate their fears." *See id.* at 420.

In alleging an injury in fact, Plaintiff claims that the Department's payment pause on student loans will ultimately increase Plaintiff's adjustable-rate home mortgage. ECF 17 at ¶ 54.

PAGE 7 – OPINION AND ORDER

To show the connection between these policies and Plaintiff's future injury, Plaintiff first contends that the challenged student loan policies will increase inflation. *Id.* at ¶ 55. This increase in inflation will in turn prompt the Federal Reserve Bank ("Fed") to increase the federal funds rate. *Id.* Plaintiff then alleges that this future increase in the federal funds rate will increase the 1-year treasury index, which will consequently increase Plaintiff's adjustable-rate home mortgage. *Id.* at ¶ 54.

However, in alleging this injury, Plaintiff has not established that the Fed *will* raise the federal fund rate in response to inflation allegedly caused by payment pause. As a result, this Court finds that Plaintiff has failed to plead that his threatened injury is "certainly impending" or that "there is a substantial risk the harm will occur." *See In re Zappos.com, Inc.*, 888 F.3d at 1024 (quoting *Susan B. Anthony List*, 573 U.S. at 158).

First, Plaintiff has failed present concrete evidence about any plans by the Fed to address inflation by increasing the federal funds rate as a result of the payment pause. Plaintiff alleges that "the Federal Reserve will be obliged to raise the target federal funds rate higher than would otherwise be required, absent the [payment pause]." ECF 17 at ¶ 55. However, Plaintiff may not rely "on mere conjecture about possible governmental actions" and must instead present "concrete evidence to substantiate [his] fears." *See Clapper*, 568 U.S. at 420. To support this allegation, Plaintiff cites an article published by the Committee for a Responsible Federal Budget, which only notes that "[t]he Federal Reserve *can* offset the inflationary effect . . . by raising interest rates." ECF 17 at ¶ 50 (emphasis added).

Second, Plaintiff acknowledges that the Fed may utilize other tools in lieu of raising the federal funds rate in response to any alleged inflation. *Id.* ("The Federal Reserve can offset the inflationary effect . . . by raising interest rates or *otherwise tightening monetary policy*."

PAGE 8 – OPINION AND ORDER

(emphasis added)). The existence of these other methods further undermines Plaintiff's alleged injury, as Plaintiff's theory of injury requires this Court to speculate about future, discretionary policy choices by the Fed. *See Clapper*, 568 U.S. at 412 (finding allegations regarding how government actors will exercise their discretion "necessarily conjectural" where applicable statute does not mandate projected government action); *Munns v. Kerry*, 782 F.3d 402, 409–10 (9th Cir. 2015) (finding no injury-in-fact where Plaintiff based future injury on risk that government would reinstate former policy); *San Luis & Delta-Mendota Water Auth. v. Haugrud*, 848 F.3d 1216, 1233 (9th Cir. 2017) (finding no injury-in-fact where plaintiff's projected series of events causing economic harm involved speculation as to future regulations).

## B. Fairly Traceable to Challenged Action of Defendants

Defendants also contend that Plaintiff has failed to sufficiently plead that Plaintiff's future injury is fairly traceable to the extension of Defendants' payment pause. In addition to pleading an injury-in-fact, Article III requires that a plaintiff plausibly allege that an injury is "fairly traceable to the challenged action of the defendant." *Friends of the Earth, Inc.*, 528 U.S. at 180–81; *see also Spokeo*, 578 U.S. at 338. An injury is "fairly traceable" where there is a causal connection between the injury and the defendant's challenged conduct. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

In addressing this element, Plaintiff alleges that Defendants' extended payment pause will cause the Fed to increase the federal funds rate, ultimately leading to future injury. However, Plaintiff has not established that a future rate increase by the Fed could be attributed to the extended payment pause specifically, as opposed to other inflationary pressures in the economy. "[W]here injury is alleged to occur within a market context, the concept of causation . . . become[s] particularly nebulous and subject to contradictory, and frequently unprovable, analyses." *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996)

PAGE 9 – OPINION AND ORDER

(citation omitted). As Plaintiff concedes, the payment pause is not the sole factor affecting inflation or the federal funds rate. ECF 19 at 13 ("The Fed does not address inflation by raising rates in response to discrete events or activities."); ECF 17 at ¶ 74 (alleging that current inflation is largely a product of "unrestrained Congressional spending in recent years"); *see San Diego Cnty. Gun Rts. Comm.*, 98 F.3d at 1130 (finding economic injury not fairly traceable to challenged legislation where other factors affected relevant market); *Dep't of Educ. v. Brown*, ___ U.S. ___, 2023 WL 4277209, at *8 (finding injury not fairly traceable to challenged legislation where causal connection depended on government's "discretionary decision[s]" regarding loan relief policies). Indeed, although the payment pause has been in effect since March 13, 2020, Plaintiff attributes current inflation "primarily" to "unrestrained Congressional spending"—a source of potential injury distinct from Defendants' challenged conduct. *See* ECF 17 at ¶¶ 74, 31; *see Novak v. United States*, 795 F.3d 1012, 1019 (9th Cir. 2015) (finding injury not fairly traceable to challenged legislation where complaint also alleged independent sources of injury).

This Court finds that even if the Fed raised the federal funds rate after the implementation of the extended payment pause, the exact cause of a rate increase—e.g., whether from the payment pause or from some other economic force such as "unrestrained Congressional spending"—would be subject to speculation. Plaintiff has failed to sufficiently plead that his alleged injury is fairly traceable to the extension of Defendants' payment pause.

**C. Redressability**

Finally, Defendants contend that Plaintiff's alleged injury will not be redressed by a favorable decision by this Court. "[R]edressability analyzes the connection between the alleged injury and requested judicial relief." *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1146

(9th Cir. 2013). Redressability requires that it is "likely" and not "merely speculative" that the plaintiff's injury will be remedied by the requested relief. *Lujan*, 504 U.S. at 561.

Plaintiff requests that this Court preliminarily and permanently enjoin the payment pause and compel Defendants to resume collections and interest accrual. ECF 17 at 21. However, this Court finds that it is not likely that granting Plaintiff's requested relief would remedy his future injury. Plaintiff has not demonstrated that inflation or the federal funds rate would not increase independent of Defendants' challenged conduct. Instead, Plaintiff concedes that other factors may affect inflation and the federal funds rate. *See* ECF 19 at 13; ECF 17 at ¶ 74. Accordingly, Plaintiff has not demonstrated that enjoining Defendants' payment pause would prevent an increase in Plaintiff's mortgage costs due to heightened inflation and an increased federal funds rate. This Court finds that Plaintiff has not established that it is likely that Plaintiff's injury will be remedied by his requested relief.

Even liberally construing Plaintiff's Supplemental Complaint, *Erickson*, 551 U.S. at 94, this Court finds that Plaintiff has failed to establish the three elements of standing. Consequently, this Court lacks subject matter jurisdiction over this case. Accordingly, Defendants' Motion to Dismiss is GRANTED with leave to amend.

///

///

///

PAGE 11 – OPINION AND ORDER

## CONCLUSION

Defendants' Motion to Dismiss, ECF 18, is GRANTED with leave to amend. Any amended Complaint must be filed by July 27, 2023. The Court advises Plaintiff that the amended Complaint will serve as a complete substitute for the original, and not as a supplement. *See Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) (explaining that "[a]s a general rule, when a plaintiff files an amended complaint, [t]he amended complaint super[s]edes the original, the latter being treated thereafter as non-existent." (internal quotation marks and citation omitted)).

**IT IS SO ORDERED.**

DATED this 6th day of July, 2023.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

PAGE 12 – OPINION AND ORDER